UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EATON CORPORATION,

    Plaintiff,                               Case No. 13-12392

v.                                           Hon. John Corbett O'Meara
                                                  Mag. Judge Laurie J. Michelson
ANDREW M. WEEKS,

    Defendant.
_____/

**ORDER ON (1) PLAINTIFF'S MOTION FOR PROTECTIVE ORDER [11] AND
(2) DEFENDANT'S MOTION FOR LEAVE TO TAKE SECOND DEPOSITIONS [18]**

This matter is before the Court on two discovery motions that have been referred for a hearing and determination. (Dkts. 11, 12, 18, 20.) The motions are fully briefed (Dkts. 14, 16, 19, 26, 27, 30) and the Court heard oral argument on Thursday, February 20, 2014. For the reasons stated below and on the record during the hearing, Defendant's Motion for Leave to Take Second Depositions is **GRANTED** and Plaintiff's Motion for Protective Order is **GRANTED IN PART AND DENIED IN PART**.

**I.     BACKGROUND**

"This case involves allegations that Defendant, Andrew Weeks, breached the provisions of a series of agreements which he executed with Plaintiff, Eaton Corporation, during his employment at Eaton. In essence, these agreements provided that Mr. Weeks [former General Manager and Senior Vice President] was eligible to receive lucrative stock options and restricted stock in connection with his employment by Eaton, and that, if Mr. Weeks left his employment with Eaton to join a competitor within one year of Mr. Weeks' exercise of stock options and/or receipt of restricted stock pursuant to these agreements, he would repay to Eaton the substantial sums which

he obtained through his actions." (Dkt. 7, Joint Discovery Plan, ¶ 1.) In the twelve months before leaving Eaton to allegedly join a competitor, Weeks exercised stock options and received restricted share units totaling approximately $1.3 million. (Dkt. 11, Mot. for Prot. Order at 1.) Eaton requested that Weeks repay these benefits. When Weeks refused, Eaton brought this lawsuit alleging breach of contract and conversion. (Dkt. 1.)

The contract provision at issue expressly states:

> In the event that the Optionholder voluntarily leaves employment of the Company or a subsidiary and within one (1) year after exercise of any portion of this option enters into an activity as employee, agent, officer, director, principal or proprietor which, in the sole judgment of the [Compensation and Organization] Committee [of the Board of Directors of the Company], is in competition with the Company or a subsidiary, the amount by which the fair market value per share on the date of exercise of any such portion exceeds the option price per Common Share hereunder, multiplied by the number of Common Shares subject to such exercised portion, shall inure to the benefit of the Company and the Optionholder shall pay the same to the Company, unless the Committee in its sole discretion shall determine that such action by the option holder is not inimical to the best interest of the Company or its subsidiaries.

(Dkt. 14, Resp. to Mot. for Prot. Order at 2, Ex. B.)

Weeks contends that he has learned through discovery that "Eaton appears to have failed to trigger the 'recoupment' provisions as expressly required by the stock options and grants." (Dkt. 18, Mot. for Second Deps. at 1.) Weeks has deposed Thomas Nykamp ("Nykamp"), Eaton's Vice President of Executive Compensation, and Cynthia Brabander ("Brabander"), Eaton's Chief Human Resources Officer. Both depositions were less than an hour and a half. From these depositions and other documents, Weeks believes that Eaton Chairman Alexander Cutler was the person who decided to seek recoupment against Weeks, and not the Compensation Committee.

More specifically, Weeks contends that the decision to seek recoupment could not have been

2

made solely by the Compensation Committee as required by the contract because the decision had already been made prior to the Committee's resolution. (Resp. to Mot. for Prot. Order at 3.) On April 15, 2013, Eaton, through its Deputy General Counsel Taras Szmdala, sent a letter to Weeks seeking recoupment of the $1.3M:

> This letter will serve to advise you that in connection with your decision to resign from Eaton and begin employment with Parker Hannifin, Eaton has determined that you have entered into an activity which is in competition with Eaton. This determination is made in reference to the various stock options and restricted stock agreements that you have entered into and the terms of stock option and restricted stock grants you accepted as a senior manager with Eaton over the period of 2005 to 2012. These agreements and grants, which set forth the terms pursuant to which Eaton stock options and restricted stock units were granted to you, provide Eaton certain rights in the event you voluntarily terminate your employment with Eaton and engage in such competitive activity. … Accordingly, pursuant to the terms of the stock option and restricted stock unit agreements to which you are a party and the terms of stock option and restricted stock grants you accepted, as a result of your decision to commence employment in competition with Eaton, Eaton is entitled to repayment from you in the amount of $1,325,025.63 . . . . Please contact me to arrange for prompt repayment of the amount owed.

(Resp. to Mot. for Prot. Order at Ex. F.) Subsequently, the Compensation Committee of Eaton's Board of Directors met on April 23, 2013 and passed the following resolution:

> Following the discussion, upon motion duly made, seconded and unanimously carried, the following resolution was adopted:
>
> RESOLVED: That the Committee hereby determines that, based on the circumstances described at the meeting, immediate action should be taken to recover from the former executive [Andrew Weeks] the value of the long-term incentive awards that is subject to recoupment.

(*Id*. at Ex. E.)

In response to Weeks' October 1, 2013 discovery requests, Eaton produced documents on November 5, 8, and 26. (Mot. for Second Deps. at 2.) Eaton contends that it was time-consuming

to gather, review, and produce relevant documents which included significant electronically stored information. Thus, additional documents were produced after Nykamp's November 21, 2013 deposition. In addition to the November 26 production, on December 3, 2013, the night before Brabander's scheduled deposition, Eaton produced a CD containing approximately 2,000 documents. (*Id.* at 3.) On December 13, 2013, Eaton produced an additional 1,852 pages of documents. (*Id.*) Weeks contends that the later-produced documents show greater involvement in the recoupment issues than Nykamp and Brabander previously testified. (*Id.* at 2.) Accordingly, Weeks would like to re-depose these witnesses in order to question them about the documents produced on December 3, 2013. (Resp. at 7, Ex. J.) Weeks contends that this discovery directly pertains to one of his defenses in this case: "whether Eaton acted in violation of the option agreements, thereby voiding the purported actions taken after the fact by Eaton's Compensation Committee." (Mot. for Second Deps. at 5.) Eaton challenges the legal viability of the defense and also contends that Weeks waived his rights when he decided to depose these witnesses knowing that additional documents were yet to be produced. (Dkt. 27, Resp. at 4-5) ("Eaton's counsel made clear before the [Nykamp] deposition commenced that Eaton was reviewing more than 92,000 documents to respond to the document requests. Mr. Weeks did not seek to postpone the deposition nor did he raise a concern that he would not be prepared to go forward.") Thus, Eaton believes additional depositions are unwarranted.

Weeks is also seeking to depose Alexander Cutler, Eaton's Chairman and Chief Executive Officer, and Tara Szmagala Jr., Eaton's Deputy General Counsel, regarding the decision to seek

4

recoupment from Weeks. (Dkt. 11, Pl. Mot. for Prot. Order.)[1] Weeks contends that the witnesses who have been deposed provided conflicting testimony. According to Weeks, Nykamp testified that the decision to seek recoupment (from Weeks) had been made by Cutler, and Brabander testified that "the decision to pursue the recoupment had been reviewed with Chris Connor, the chairman of the compensation committee," prior to the sending of the April 15, 2013 letter. (Resp. at 7, Ex. D.)[2] Neither witness, however, could identify any authority for Cutler and/or Connor to have made this decision, and thus, Weeks wants to question them directly as to why they believed they had the authority to make this decision. According to Weeks,

> both Cutler and Connor have relevant information regarding the factual basis for Eaton's authority to seek recoupment against Weeks . . . . To date, no one has been able to articulate how Eaton could proceed before obtaining the approval of the Compensation Committee. This testimony is highly relevant to whether Eaton's actions were valid.

(*Id.* at 8.) Because Szmagala signed the April 15, 2013 demand letter, Weeks believes he too has information regarding the basis for Eaton to send this letter prior to any decision being made by the Compensation Committee. (*Id.*)

## II.   ANALYSIS

---

[1] Defendant was also seeking to depose Christopher Connor, the Chairman of Eaton's Compensation Committee and Chief Executive Officer of The Sherwin-Williams Company, but withdrew this request during the oral argument.

[2] According to Eaton, Ms. Brabander testified that she, Cutler, and Eaton counsel made the management decision to pursue recoupment in a privileged conference. (Dkt. 11, Mot. for Prot. Order at 5, 7.) Eaton's Reply attaches emails that Eaton contends show Cutler's primary role consisted of receiving updates from Brabander, that Connor merely agreed that Eaton should seek recoupment, and that Szmagala provided legal advice. (Dkt. 16, Reply at Ex. B.) Weeks wants discovery on why/how the management decision could be made prior to the meeting of the Board and the Compensation Committee.

**A.     Motion For Leave To Take Second Depositions**

Pursuant to the Federal Rules of Civil Procedure, "a deposition is limited to 1 day of 7 hours." Fed. R. Civ. P. 30(d)(1). Although depositions are ordinarily noticed and taken without the involvement of the court, Federal Rule of Civil Procedure 30(a)(2)(A)(ii) requires a party to obtain leave before deposing an individual who has been deposed once before. The trial court has discretion in deciding whether to grant leave to take a second deposition, *Nellcor Puritan Bennett LLC v. CAS Medical Systems, Inc.*, 2013 U.S. Dist. LEXIS 89589, * 10-11 (E.D. Mich. June 26, 2013), and it must do so "to the extent consistent with Rule 26(b)(2)." Fed. R. Civ. P. 30(a)(2). Rule 26(b)(2) requires a court to consider whether the second deposition would be unnecessarily cumulative, whether the party requesting the deposition has had other opportunities to obtain the same information, and whether the burden of a second deposition outweighs its potential benefit. As another Court in this Circuit has advised:

> The courts have dealt with a number of repetitive scenarios in applying these principles. Typically, if, after a witness is deposed, new information comes to light relating to the subject of that deposition, new parties are added to the case, new allegations are made in pleadings, or new documents are produced, the witness may be re-deposed with respect to these new developments. *See Keck v. Union Bank of Switz.*, 1997 U.S. Dist. LEXIS 10578, 1997 WL 411931 (S.D.N.Y. July 22, 1997). A re-deposition may also be ordered if the examining party was inhibited from conducting a full examination as a result of obstructive conduct at the first deposition. *Id*. However, the Court may deny leave to conduct a second deposition of the witness even if relevant documents are produced subsequent to the deposition if the party taking the deposition either failed to request those documents in a timely fashion or chose to conduct the deposition prior to the completion of document discovery. *See Lowery v. Noble Drilling Corp.*, 1997 U.S. Dist. LEXIS 23553, 1997 WL 675328 (E.D.La. October 29, 1997).

*Fresenius Med. Care Holdings, Inc. v. Roxane Labs., Inc.*, No. 05-0889, 2007 U.S. Dist. LEXIS

17834, at *10 (S.D. Ohio Mar. 9, 2007)

Here, there is no dispute that additional documents were produced after the short depositions of Nykamp and Brabander. Plaintiff relies on *Nellcor Puritan Bennett LLC v. CAS Medical Systems, Inc.*, 2013 U.S. Dist. LEXIS 89589, at *10-11 (E.D. Mich. June 26, 2013), for the proposition that a party who elects to take a deposition, knowing that documents have not yet been produced, assumes the risk that the deposition is premature. On November 19, 2013, after defendant had already made two productions of documents, the parties exchanged emails regarding the production of a privilege log. When Defendant questioned the projected December 6, 2013 production date, Plaintiff's counsel responded, "We'll get it to you earlier if we can, but we are reviewing more than 92,000 documents for privilege." (Resp., Ex. B.) It is unclear whether Plaintiff was communicating that these were documents remaining to be produced such that the Nykamp and Brabander depositions should be delayed. Indeed, at the hearing, Plaintiff's counsel indicated that the email meant they were reviewing the documents for relevance and not privilege. And after the November 19 email, Plaintiff only produced approximately 4,000 more documents. Apparently, the additional 88,000 documents were not relevant. The Court cannot say that the November 19 email adequately conveyed to Defense counsel that he should hold off on taking the noticed depositions until additional documents were produced. Plaintiff was the party controlling the production and they could have suggested delaying the depositions just as easily as Defendant. Unfortunately, the parties had no such direct conversation and the email was ambiguous.

Moreover, the fact that Defense counsel received an additional 2,000 documents the day before the Brabander deposition does not mean he had sufficient time to prepare to use them during the deposition.

In sum, out of the seven hours allotted by the Federal Rules of Civil Procedure, Defendant deposed Nykamp and Brabander for a little over one hour each. The Court believes that the depositions were initially scheduled in an effort to meet the original discovery cut-off date and not for any improper purpose. Following Nykamp's deposition and the day before Brabander's deposition, additional documents pertaining to these witnesses and their involvement in the recoupment decision were produced. Defendant seeks to re-depose these witnesses about specific documents for no longer than the length of their original depositions. (Dkt. 30, Reply at Ex. A.) The request is not unreasonable. Thus, Defendant's motion for leave to take second depositions of Nykamp and Brabander is GRANTED.

### B.      Motion For Protective Order To Preclude Depositions Of High Level Officers

Plaintiff seeks to preclude the depositions of its CEO and Deputy General Counsel pursuant to the "apex doctrine." As Magistrate Judge Majzoub explained in dealing with a similar argument:

> Plaintiff urges the Court to apply the "apex doctrine" in which courts will protect individuals at the apex of a corporate hierarchy from deposition when such individuals lack personal knowledge regarding the litigation, or when the requested information could be garnered from equally or more knowledgeable subordinates. The Sixth Circuit has held that "[e]ven in cases where [the court] ha[s] considered extensively a corporate officer's knowledge and, thus, capacity to provide information relevant to the case," the court must analyze whether the deposition will subject the corporate officer to "annoyance, embarrassment, oppression, or undue burden or expense." (citation omitted)

*Aetna Inc. v. Blue Cross Blue Shield*, No. 11-15346, 2013 U.S. Dist. LEXIS 61932, at *3 (E.D. Mich., Apr. 30, 2013) (citing *Serrano v. Cintas Corp.*, 699 F.3d 884, 901 (6th Cir. 2012). Eaton contends that a protective order is warranted here because the requested depositions would merely be cumulative of the depositions already taken and have been noticed "simply to harass Eaton and

its executives, in an attempt to gain leverage." (Mot. for Prot. Order at 2-3.) The Court agrees in part and disagrees in part.

As mentioned, Weeks is pursuing a defense that Eaton's breach of contract claim is deficient because Eaton did not properly seek recoupment according to the controlling contract provisions. It is Weeks' position that only Eaton's Compensation Committee can decide whether a former employee is engaging in competitive activity, thereby triggering Eaton's right to seek recoupment of the stock benefits. Here, however, Eaton demanded recoupment one week before the Compensation Committee made this decision. On April 13, 2013, CEO Cutler sent an email to Brabander regarding the Agenda for the upcoming Board meeting. (Dkt. 16, Pl. Reply at Ex. 2.) Cutler asked, "why do we want to call out the discussion of recoupment of compensation from an executive leaving the company – this is a question of management enforcement of a claw back provision – I don't think we want our board to have to deal with matters of enforcement of a policy." (*Id.*) Ms. Brabander responded that "regarding the recoupment issue, our agreements variously refer to the Board Committee and Management Committees. You and I as the Management Committee can take the action but to be assured from a legal standpoint we want to receive a determination from the C&O committee. Chris [Cutler] was fully on board with taking the action to recoup." (*Id.*) Mr. Nykamp likewise testified that it was his understanding that he needed board approval to send the April 15, 2013 demand letter. (Dkt. 14, Def. Resp. at Ex. D, Nykamp dep. at 18.) The April 15, 2013 letter states that "Eaton has determined" that Weeks entered into an activity that was in competition with Eaton and demanded he repay $1.3M.

Weeks wants to know why Mr. Cutler believed he had the authority to make this determination as of April 15, 2013. He also questions whether the Compensation Committee was

given adequate information about Weeks' new job to even make a determination concerning Weeks' competitive activity. And he further questions the company's motivation for seeking recoupment from Weeks. During the hearing, counsel for Defendant posited the theory that Cutler made the recoupment decision in order to punish Weeks for his refusal to take a promotion and not because he left to engage in competitive activity. According to Defendant, Eaton's alleged failure to strictly adhere to the contractual recoupment procedures provides a defense to Plaintiff's breach of contract claims. Indeed, the Court notes that these arguments are raised in Defendant's Motion for Summary Judgment. (Dkt. 36.)

Plaintiff rejects Weeks' arguments. Plaintiff contends that, as a matter of law, the Resolution passed by the Compensation Committee on April 23, 2013, was fully compliant with the contract requirements. More specifically, Plaintiff contends that even if Cutler and Connor jumped the gun in deciding to seek recoupment from Weeks, the decision was then properly made at the April 23 Compensation Committee meeting. Plaintiff says it is not aware of any contract principle, nor has Defendant cited any, that Eaton somehow forfeited its right to properly enforce the contractual recoupment provision or that the ultimate decision of the Compensation Committee is somehow ineffectual because its agents made an earlier demand. Eaton also responds that, under Ohio agency law, a corporate board is entitled to ratify a principle's action. Thus, says Eaton, even assuming its agents acted without authority to demand recoupment from Weeks on April 15, Eaton's Board of Directors ratified the decision and thereby cured any deficiency when it resolved to seek recoupment on April 23. (Dkt. 27, Resp. to Mot. for Second Deps. at 15-16.)

"Under the Federal Rules of Civil Procedure discovery is generally broad and generous." *William Beaumont Hospital v. Medtronic, Inc.*, No. 09-11941, 2010 WL 2534207, at *7 (E.D. Mich.

June 18, 2010). Indeed, Federal Rule of Civil Procedure 26 provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . . Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. Rule Civ. Proc. 26(b)(1). "As the Supreme Court has instructed, because discovery itself is designed to help define and clarify the issue, the limits set forth in Rule 26 must be construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Conti v. American Axle and Mfg., Inc.*, 326 Fed. Appx. 900, 904 (6th Cir. 2009).

The Court does not doubt that Plaintiff has raised strong legal arguments and may prevail on summary judgment. (Dkt. 34.) But Rule 26 enables Weeks to discover facts that are relevant to his defense even if that defense is ultimately found to be legally deficient. *See Disability Law Ctr. of Alaska, Inc. v. N. Star Behavioral Health Sys.*, No. 07-00062, 2008 U.S. Dist. LEXIS 16403, at *7 (D. Alaska Mar. 3, 2008) ("[Plaintiff] offers no authority that the sufficiency of a defense is pertinent to relevancy for discovery purposes . . . ."); *Member Servs. v. Sec. Mut. Life Ins.*, No. 06-1164, 2007 U.S. Dist. LEXIS 17498, at *6 (N.D.N.Y. Mar. 12, 2007) ("The word 'meritorious' is not included within [Rule 26] as a limitation with respect to the phrase 'claim or defense'. And, having neither found nor been cited any authority to the contrary, I reject the notion that in order to obtain discovery a party must first demonstrate palpable merit with respect to its claims or defenses."). On the record before this Court, it appears that the information being sought is relevant to Weeks' defenses or is reasonably calculated to lead to the discovery of admissible information, irrespective of the ultimate viability of the defense.

The essence of this lawsuit is the propriety of Eaton's decision to seek recoupment from

11

Weeks. The discovery reveals that Mr. Cutler was directly involved in this issue. He is not being asked to testify simply because of his position. Neither Nykamp nor Brabander was able to testify regarding the authority for Eaton to proceed before April 23, 2013, when the recoupment decision was made by the Compensation Committee. (*See* Weeks. Resp. at 8.) Nor could they testify as to Mr. Cutler's motivation for seeking recoupment. While Ms. Brabander did testify about the content of the Compensation Committee's discussion of Weeks, Defendant believes Cutler can provide additional information. Thus, the testimony being sought is not overly cumulative of that given by Brabander and Nykamp.

The Court finds, however, that it would be cumulative for Defendant to depose both Cutler and Szmagala. The April 15 letter, while signed by Szmagala, was sent on behalf of Eaton. Thus, Cutler can answer any questions regarding the authority to send the letter and for the decisions referenced in the letter.

The Sixth Circuit has made clear that it is the movant's burden to establish its need for a protective order "'with a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements.'" *Serrano*, 699 F.3d at 901 (quoting *Nemir v. Mitsubishi Motors Corp.*, 381 F.3d 540, 550 (6th Cir. 2004)). Plaintiff has not met this burden. In asking that the depositions be prevented in their entirety, they rely on the ultimate stereotype: the proposed deponents are busy executives of Fortune 500 companies. (Reply at 6.) This is not sufficient were the executives may have relevant information. Moreover, just because Plaintiff questions the legal viability of the defenses being pursued by Weeks does not establish that the depositions are being sought solely to harass the witnesses. Indeed, Plaintiff presents no evidence to support its charge of harassment. Counsel for Weeks expressly advised counsel for Eaton that he was not seeking to

12

harass the executives and that if their answers were responsive, he could complete the depositions in one hour. (Dkt. 30, Def. Reply to Mot. for Second Deps. at Ex. A.) Eaton is the Plaintiff. They initiated this lawsuit for recoupment. This issue involves their high-level executives. They are not being dragged into something unforeseen. And any burdens can be reduced with appropriate limitations on the deposition.

### III. CONCLUSION

Accordingly, for the reasons set forth above and on the record during the hearing, (1) Defendant's Motion for Leave to Take Second Depositions (Dkt. 18) is **GRANTED** as follows: Defendant may re-depose Nykamp and Brabander at a location of their choice in Cleveland, Ohio, for no more than one and one-half hours, the questioning is limited to the documents produced on December 3, 2013, and Defendant may not ask any questions or about any documents that they asked during the previous depositions; and (2) Plaintiff's Motion for Protective Order (Dkt. 11) is **GRANTED IN PART AND DENIED IN PART** as follows: Defendant may depose Alexander Cutler at a location of Cutler's choice in Cleveland, Ohio, for no more than 1 hour and the questioning is limited to Eaton's decision to seek recoupment from Weeks and his involvement in the same.

**IT IS SO ORDERED**.

The attention of the parties is drawn to Fed. R. Civ. P. 72(a), which provides a period of fourteen days from the date of receipt of a copy of this order to file objections for consideration by

the district judge under 28 U.S.C. § 636(b)(1).

                                            S/Laurie J. Michelson
                                            Laurie J. Michelson
                                            United States Magistrate Judge

Dated: February 24, 2014

---

## PROOF OF SERVICE

The undersigned certifies that the foregoing document was served upon the parties and/or counsel of record via the Court's ECF System and/or U. S. Mail on February 24, 2014.

                                            s/Jane Johnson
                                            Case Manager to
                                            Magistrate Judge Laurie J. Michelson